UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE ANN WIGMORE FOUNDATION, INC., et al., | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:20-cv-11150-IT |
| THE STERLING FOUNDATION, INC., et al., | * * * | |
| | * * | |
| Defendants. | * | |

MEMORANDUM AND ORDER
May 11, 2021

TALWANI, D.J.

In 2012, the charter of The Ann Wigmore Foundation, a Massachusetts non-profit corporation, was revoked for failing to file required annual statements. Six years later, the Secretary of State for the Commonwealth of Massachusetts approved the corporation's revival and merger with a New Mexico non-profit corporation. Plaintiffs brought this action for fraud and conversion under Massachusetts law against that corporation and others, alleging that the revival and merger were fraudulently obtained. Plaintiffs' Amended Complaint [#22] alleges further that these Defendants violated RICO and the Lanham Act, and seeks declaratory relief against them and the Secretary.

Defendants (not including the Secretary) seek to dismiss the action pursuant to the prior-pending action doctrine and Federal Rules of Civil Procedure Rules 12(b)(1), 12(b)(2), and 12(b)(6). For the reasons that follow, the Motion to Dismiss Plaintiffs' Amended Complaint [#33] is ALLOWED in part and DENIED in part.

I.   <u>Facts as Alleged</u>

Except where otherwise noted, the following facts are drawn from the <u>First Amended</u> <u>Complaint</u> ("Am. Compl.") [#22], the well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to dismiss, <u>see</u> <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014), and certain state court and other public records.

A.   <u>Parties</u>

Plaintiff The Ann Wigmore Foundation ("AWF") was a Massachusetts non-profit corporation that was also a registered foreign non-profit corporation in New Mexico. Am. Compl. ¶ 13 [#22].

Plaintiff Susan Lynn Lavendar Baran ("Lavendar") is a resident of New Mexico and has operated as a "caretaker and steward for AWF from 2000 to the present." <u>Id.</u> at ¶ 14. Lavendar lived on AWF's property in San Fidel County, New Mexico for approximately 20 years. <u>Id.</u>

Defendant The Sterling Foundation, Inc. ("Sterling") is a New Mexico non-profit entity. <u>Id.</u> at ¶ 15.

Defendant R. Greenleaf Organics, Inc. ("Greenleaf Inc.") is a New Mexico non-profit corporation registered as a state-licensed medical cannabis producer. <u>Id.</u> at ¶ 16. Greenleaf Inc. offers marijuana products for sale via the internet for delivery in New Mexico. <u>Id.</u>

Defendant Reynolds Greenleaf & Associates, LLC ("Greenleaf LLC") is a New Mexico limited liability corporation which operates from New Mexico and provides financial and management services and cannabis industry consultation. <u>Id.</u> at ¶ 17.

Greenleaf Inc. and Greenleaf LLC (collectively, "Greenleaf") share the same office location and operate in coordination. <u>Id.</u> at ¶ 18.

Defendant William N. Ford, Sr. ("Ford") is a New Mexico resident. Id. at ¶ 19. Ford is the managing director of Greenleaf LLC and is the founder and has served as the president and CEO of Greenleaf Inc. Id. He also controls Sterling. Id. at ¶ 58.

Defendant William Francis Galvin is the Secretary of State for the Commonwealth of Massachusetts. Id. at ¶ 21.[1]

B. The Ann Wigmore Foundation, its History, and Status Prior to 2000

AWF was organized as a Massachusetts nonprofit in 1963 under the name Rising Sun Christianity – A Corporation, with the purpose of:

> Putting Biblical truths in action. It places equal stress on two individual duties – full development of the soul and the hygienic care of the "temple of that soul" – the body. This harmonious blending of the mental and physical eliminates harmful habits and ungenerous impulses, enabling the individual, at all time, to merit the ever-present help of the Almighty.

Id. at ¶ 24; Plaintiffs' Ex. D, Merger Statement D-23 [#22-4].

In 1982, Rising Sun Christianity, Inc. merged with Hippocrates World Health Organization, Inc. Am. Compl. ¶ 25 [#22]; Plaintiffs' Ex. D, Merger Statement D-27 [#22-4]. The merger agreement provided:

> In case of dissolution, the then assets are to go to any similar organization engaged in the improvement of health, both physical and spiritual, and one which has received tax-exempt status from the United States Treasury Department. If such an organization cannot be found then in No event are the assets to be distributed to any individual, but shall be left for the probate court to determine and select an equally deserving organization.

Plaintiffs' Ex. D, Merger Statement D-31 [#22-4]; see also Am. Compl. ¶ 25 [#22].

In 1992, Rising Sun Christianity, Inc., was renamed The Ann Wigmore Foundation. Am. Compl. ¶ 25 [#22]. Ann Wigmore, N.D., was an early pioneer of the use of wheatgrass juice and

---

[1] His position is referred to alternatively as Secretary of the Commonwealth of Massachusetts, see e.g., Plaintiffs' Ex. A, Application for Revival A-1 [#22-1], or Secretary of State for the Commonwealth of Massachusetts. Answer [#32]. He is referred to herein as "Secretary."

"living foods," organically grown, uncooked foods, as means of "detoxifying and healing the human body, mind, and spirit"; her teachings focused on using living foods to rebuild health. Id. at ¶ 22. Ann Wigmore authored many books that taught her self-healing methods through living foods; she owned the copyrights to her books and throughout her life received royalties from them. Id. at ¶¶ 26-30. Ann Wigmore also secured common law and registered trademarks relating to her work, including "Ann Wigmore Foundation," on behalf of AWF. Id. at ¶ 31. AWF also had tax exempt status as a charitable and educational organization under 26 U.S.C. § 501(c)(3). Id.

When Ann Wigmore died in 1994, all tangible and intangible property, including her intellectual property, was bequeathed to AWF. Id. at ¶ 32. Since 1994, AWF has owned this property and used the assets and the AWF name "to promote the mission, goals, values, principles, and teachings of Ann Wigmore and to expand public awareness of them." Id. at ¶ 33.

In February 1995, AWF filed an Application for Certificate of Authority to transact business in New Mexico. Plaintiffs' Ex. D, Merger Statement D-51 [#22-4]. According to the Application, AWF's officers at the time were Shu H. Chan, serving as President, Treasurer, and Director, and Joseph P. Petrelli, serving as Secretary and Director. Id. In March 1995, the New Mexico Secretary of State issued AWF a certificate as a foreign non-profit. Id. at D-53; Am. Compl. ¶ 35 [#22].

AWF purchased a property at 10 Acequia Road in San Fidel, New Mexico (the "Property"), and conducted operations, including holding classes and growing and harvesting living foods, from the Property. Am. Compl. at ¶¶ 36-37 [#22]. The Property consists of buildings, a dwelling, and approximately 21 acres of land. Id. at ¶ 37.

In the late 1990's, AWF "fell into a state of disorganization"; AWF's then-President and a portion of AWF's cash accounts disappeared and the organization faced the risk that it would cease to exist. Id. at ¶¶ 38, 40. AWF filed no annual reports with the Secretary of the Commonwealth for 1995 and the years that followed.

4

C.  Lavendar's Relationship to The Ann Wigmore Foundation

Lavendar came to the Property in 2000 and began teaching classes, growing and expanding the garden, and maintaining and expanding the AWF dwellings and AWF land. Id. at ¶¶ 39, 43. Lavendar shared the values and goals of AWF, namely a "commitment to living foods, plants, and wheatgrass to cleanse and perfect the soul and body in a manner consistent with the late [Ann] Wigmore's and the AWF's stated mission, goals, values, principles, and teachings." Id. at ¶ 39. In 2000, AWF's attorney, the only confirmed director of AWF other than the then-president who disappeared sometime in the late 1990s, "advised Lavendar that she could both manage AWF and serve as one of its directors." Id. at ¶ 42.

Since 2000, Lavendar "served as a director of AWF and as its full-time caretaker and steward." Id.; see also id. at ¶ 14. Her work to work to advance AWF's operations, and to keep AWF functioning has included teaching classes and improving the buildings and the land.[2] Id. at ¶¶ 42, 45.

Lavendar has also "tended to . . . the ongoing reputation and image of AWF, its trademarks and public image of it" to further the mission and goals of AWF, including by defending AWF's trademarks. Id. at ¶¶ 42-43, 45; see also Plaintiffs' Ex. 11, Compl. & Settlement in W.D. Mich. [#38-11].

Through the efforts of others before 2000, and Lavendar since 2000, AWF's registered trademark, "Ann Wigmore Foundation," has been associated with healthy foods, living foods, and the "advocacy of living in and observing a smoke and drug-free environment." Am. Compl.  ¶ 44 [#22]. AWF has also become associated with Lavendar as she has been its public spokesperson and

---

[2] The physical management of the Property includes tending to the gardens, weeding and watering, clearing portions of the Property, and replanting; Lavendar has spent many hours, sometimes up to 40 hours a week on these activities. Am. Compl. ¶ 46 [#22]. She has also made improvements to the dwellings on the Property. Id. at ¶ 48.

in charge of AWF's activities; in other words, the "Ann Wigmore Foundation" trademark has acquired a secondary meaning associated with AWF, Lavendar, and the mission, goals, values, principles, and teachings of Ann Wigmore. Id.

Beginning in 2004, Lavender claimed and recorded various liens on the Property to compensate her "for services as director, administrator, manager, program director" and for a "10% commission of sale of property." Plaintiffs' Ex. 2, Claims of Liens [#38-2]; Am. Compl. ¶¶ 50-51 [#22].

In June 2012, the Secretary revoked AWF's charter. Plaintiffs' Ex. A, Application for Revival [#22-1]; Plaintiffs' Exhibit D, Merger Statement D-45 [#22-4] see also Am. Compl. ¶¶ 52-53 [#22]. AWF's status in New Mexico was revoked in 2018. Am. Compl. ¶¶ 52-53 [#22].[3]

In 2018, Lavendar decided to sell the Property and relocate AWF to Virginia; she believed the move would serve the goals and interests of AWF, and would also allow her to take control of the proceeds of the sale to the extent they reflected her lien on the Property. Id. at ¶ 57. Lavendar listed the property for sale, with AWF identified as the seller of the Property. Id.

D.  The New Mexico Defendants' Interactions with Lavendar

In November 2018, Defendant Ford expressed interest in purchasing the Property for the use of Sterling and Greenleaf. Id. at ¶¶ 58-59. On or about November 12, 2018, Ford visited the Property. Id. at ¶ 59. Ford told Lavendar that Sterling was organized to operate a treatment center to treat patients recovering from opioid addiction by using, among other things, marijuana for their treatment. Id. at ¶¶ 60, 63.

Plaintiffs allege that Ford, Sterling, and Greenleaf claim that they reached an agreement with Lavendar to revive AWF and to merge AWF into Sterling. Id. at ¶ 61. Lavendar disputes that an

---

[3] As of September 29, 2020, the date the Amended Complaint [#22] was filed, Lavendar had filed to revive AWF's Massachusetts corporate status with the Secretary of State. Id. at ¶¶ 53, 56.

agreement to merge was reached, and states that she did not agree to the revival and/or merger. Id. at ¶¶ 61-63.

E.  The Revival of AWF and Merger with Sterling

The day after his visit to the Property, Ford signed, on behalf of Sterling, an application for revival of AWF. Plaintiffs' Ex. A, Application for Revival [#22-1]. In the application for revival, Ford did not state that the director and manager of AWF had not agreed to the merger between AWF and Sterling. Am. Compl. ¶ 65a [#22]. Ford stated that after the merger, he planned to use the Property for "plant-based healing," but did not explain that the plants used would be marijuana and other cannabis products. Id. at ¶ 65b. Ford also stated that the goals of Sterling and AWF were similar and compatible, id. at ¶ 65c, and that he "tried very hard to locate anyone with direct authority to revive the corporation but" had "no success" and that AWF had no executive leadership or administrative support and that this prevented its goals from being realized. Id. at ¶¶ 65d-65e. On November 14, 2018, noting that the filing fee had been paid, the Secretary of the Commonwealth of Massachusetts approved AWF's revival. Plaintiffs' Ex. A, Application for Revival [#22-1].

On December 3, 2018, an annual report for AWF was filed with the Secretary. Am. Compl. ¶ 66 [#22]; see also Plaintiffs' Ex. B, Annual Report [#22-2]. The annual report named William Ford, Sr., Jessica Hatfield, Karen Hammer, John Christopher Romero, and Susan Lavendar as directors of AWF. Plaintiffs' Ex. B, Annual Report [#22-2].

On December 20, 2018, a certificate of change was filed with the Secretary. Am. Compl. ¶ 67 [#22]; see also Plaintiffs' Ex. C, Certificate of Change of Directors or Officers of Non-Profit Corporation [#22-3]. The certificate of change did not list Lavendar or Hammer as directors of AWF. Am. Compl. ¶ 67 [#22]; see also Plaintiffs' Ex. C, Certificate of Change of Directors or Officers of Non-Profit Corporation [#22-3].

On December 27, 2018, Ford filed articles of merger ("Merger Statement") with the

Secretary. Am. Compl. ¶ 68 [#22]; see also Plaintiffs' Ex. D, Merger Statement [#22-4]. The Merger Statement stated the merger of AWF and Sterling was by agreement, Am. Compl. ¶ 68a [#22]; Plaintiffs' Ex. D, Merger Statement D-6 [#22-4], and that the merger was duly approved by AWF. Am. Compl. ¶ 68b [#22]; Plaintiffs' Ex. D, Merger Statement D-4 [#22-4]. The Merger Statement also stated that AWF desired to affect a merger with Sterling, that the merger had been approved by the directors of Sterling and AWF, and that the merged entity's operations would be lawful. Am. Compl. ¶¶ 68c-68e [#22]; Plaintiffs' Ex. D, Merger Statement D-6, D-7, D-9, D-14 [#22-4]. Lavendar was not described as a director of AWF in the Merger Statement; she was described as "originally an employee, but [ ] never legally a Director or Officer of" AWF. Am. Compl. ¶ 68f [#22]; Plaintiffs' Ex. D, Merger Statement D-56 [#22-4]. The Merger Statement also stated that Lavendar had used the Property for her own "personal living situation and ha[d] not used it properly to further a non-profit mission," and had been trying to sell the Property and had claimed she owned the Property. Am. Compl. ¶¶ 68e, 68i [#22]; Plaintiffs' Ex. D, Merger Statement D-56 [#22-4]. The Merger Statement stated that, other than the Property, the only assets held by AWF were intellectual property— raw food recipes and processes for preparation of these recipes. Am. Compl. ¶ 68k [#22].

As a part of the Merger Statement, Ford submitted a letter, dated December 26, 2018, on what appeared to be AWF stationary, with the "Ann Wigmore Foundation" trademark, stating that AWF's operations prior to November 2018 had been dormant for six years, and that AWF had "no official corporate bank account," id. at ¶ 69, and "no [known] legitimate corporate expenses and no operations in Massachusetts or New Mexico." Plaintiffs' Ex. D, Merger Statement D-75 [#22-4].

The Secretary approved the revival and merger and, as a result of the merger, AWF's corporate existence was terminated. Am. Compl. ¶ 70 [#22].

II.    Procedural History

AWF, Lavendar, and Karen Hammer filed a civil action against Ford, Greenleaf, Sterling, and others[4] in District Court in the State of New Mexico to challenge the "fraudulent merger." Id. at ¶ 72. That action is discussed in greater detail below.

On June 1, 2020, AWF and Lavendar filed an action in Massachusetts Superior Court against the same defendants and Secretary Galvin.[5] See Defs.' Ex. G, Complaint for Declaratory Judgment, Commonwealth of Massachusetts [#42-1]. On June 15, 2020, Plaintiffs voluntarily dismissed the Massachusetts Superior Court action without prejudice. Plaintiffs' Ex. 1, MA State Court Docket [#38-1].

On June 17, 2020, AWF and Lavendar initiated this action, against all the same Defendants. Plaintiffs subsequently voluntarily dismissed Hatfield, Romero, Tillman, and Sandifer. Notice of Voluntary Dismissal [#13]. After Defendants Ford, Greenleaf, and Sterling filed a motion to dismiss, Plaintiffs filed their Amended Complaint [#22]. Secretary Galvin filed an Answer [#32], and the remaining Defendants filed the pending Motion to Dismiss [#33].

Both sides have attached various documents to their motion papers, see Defendants' Exhibits A-G, attached to Memorandum in Support of Motion to Dismiss [#34], and Exhibits H-J, attached to counsel's affidavit [#42-1]; Plaintiffs' Exhibits 1-12, attached to Plaintiffs' Opposition [#38]. Neither side argued that this Motion to Dismiss [#33] should be converted to a motion for summary judgment, but Defendants asked the court to strike some of Plaintiffs' attachments. See Defendants' Reply 9 [#42]. At the hearing on the Motion [#33], the court sustained Defendants' objections in part, and struck a fax from Plaintiff Lavendar to the Secretary (Plaintiffs' Ex. 4 [#38-

---

[4] The additional defendants in the New Mexico action are Jessica Hatfield, Carl Scott Tillman, and Maurice Sandifer. Defs.' Ex. A, New Mexico State Court Action Docket [#42-1].

[5] This complaint also named John Christopher Romero.

4]) and a printout of Sterling's Facebook account, Twitter account, and GoFundMe pages

(Plaintiffs' Ex. 12 [#38-12]).

II. Discussion

Defendants set forth four grounds for dismissal of the Amended Complaint [#22]: the prior

pending action doctrine; that AWF and Lavendar lack standing to bring any claims against

Defendants; that the court does not have personal jurisdiction over the Greenleaf Defendants; and

that Plaintiffs have failed to state claims upon which relief can be granted under Rule 12(b)(6). See

Defendants' Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint

("Mem. in Support of Mot. Dismiss") [#34]. The court starts with standing and jurisdiction and then

addresses the remaining arguments in turn.

A. Standing

1. Legal Standard

Supreme Court case law has established "that the 'irreducible constitutional minimum' of

standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting and then

citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

"[P]rudential considerations 'ordinarily require a plaintiff to show that his claim is premised

on his own legal rights (as opposed to those of a third party), that his claim is not merely a

generalized grievance, and that it falls within the zone of interests protected by the law invoked.'"

Culhane v. Aurora Loan Servs. of Neb., 708 F. 3d 282, 290 (1st Cir. 2013) (quoting Pagán v.

Calderón, 448 F.3d 16, 27 (1st Cir. 2006)).

2. AWF's Standing

Defendants argue that Plaintiff AWF should be dismissed in this action because it was

merged out of existence and, as a result, has no capacity to sue or be sued. Mem. in Support of Mot. Dismiss 10-13 [#34]. Under Massachusetts law, "[u]pon the effective date of the consolidation or merger. . . [t]he separate existence of all the constituent corporations parties to the agreement of consolidation or merger, except any corporation into which any other constituent corporation or corporations have been merged, shall cease." Mass. Gen. Laws ch. 156B, § 80(a)(1); see also Mass. Gen. Laws ch. 180, § 10B. Here, the merger agreement provided that the effective date of the merger was January 1, 2019, and that AWF merged into Sterling, see Plaintiffs' Ex. D, Merger Statement D-4 [#22-4]; thus, Defendants argue, under the merger agreement, AWF's existence ceased on January 1, 2019.

Plaintiffs respond that AWF has standing to sue because it suffered an injury in fact—it lost the Property and the AWF name—and because the allegedly fraudulent merger of AWF into Sterling should not be used to deprive AWF of standing to sue. Opp'n 9-10 [#38]. Plaintiffs are correct that at one point in its corporate existence, AWF had the power to sue. See Mass. Gen. Laws ch. 156B, § 9(b) (a corporation has the power "in furtherance of its corporate purposes . . . to sue"); Mass. Gen. Laws ch. 180, § 6. But "[c]orporations, including nonprofit corporations, are artificial persons," Brattman v. Sec'y of Com., 421 Mass. 508, 511, 658 N.E.2d 159 (1995), and in June 2012, prior to any actions by Defendants, AWF's charter was revoked for failing to file an annual report. Mass. Gen. Laws ch. 180 § 26A(4) (failure to submit required certificates after notice of default "shall be sufficient cause for the revocation of its charter by the state secretary"). See Plaintiffs' Ex. A, Application for Revival [#22-1]; Plaintiffs' Exhibit D, Merger Statement D-45 [#22-4]; see also Am. Compl. ¶¶ 52-53 [#22].

At common law, when a corporate charter is revoked, it immediately ceases to exist as a corporation. See e.g., Franklin Fair Ass'n v. State Racing Commission, 347 Mass. 118, 196 N.E.2d 821 (1964). In Massachusetts, by statute, "'[c]orporations that have . . . had their charters revoked

are allowed three years to close their affairs." <u>Brattman</u>, 421 Mass. at 511(citing Mass. Gen. Laws ch. 156B, § 102, cross referenced in Mass. Gen. Laws ch. 180, § 10C) (the corporation "whose corporate existence for other purposes is terminated . . . shall nevertheless be continued as a body corporate for three years after the time when its existence is terminated, for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs . . . .")). Accordingly, AWF's ability to bring a suit terminated in 2015.

That is not to say that AWF would not have had the capacity to sue after 2015 if Lavender had successfully revived the corporation. But although Lavendar alleges that she has filed to revive AWF's corporate status with the Secretary of State, Am. Compl.  ¶¶ 53, 56 [#22], her petition has not been granted.

In sum, AWF does not presently have the capacity to sue, and therefore, must be dismissed from this action.

3.  Lavendar's Standing

Defendants argue that Lavendar also lacks standing because AWF was merged into Sterling, Lavendar is not a director of Sterling, is not the owner of the Property, and cannot satisfy the threshold requirement of demonstrating an injury in fact. Mem. in Support of Mot. Dismiss 13-14 [#34]. Plaintiffs argue Lavendar has standing to sue both in her capacity as director of AWF and because Defendants' fraudulent conduct directly harmed her. Opp'n 12-15 [#38].

The court finds that Lavendar has standing here. First, Lavendar has pleaded sufficient facts to show that as a result of Defendants' allegedly fraudulent actions in reviving AWF and merging AWF into Sterling, she has suffered an injury in fact, namely she has lost her place to live and her employment, and that a favorable resolution of the action before this court would resolve her injuries.

The court finds further that she has standing as an alleged claimant and alleged director

12

regarding the action at the heart of this dispute, namely the revival of AWF. Under Mass. Gen. Laws ch. 156B, § 108, if the Secretary of the Commonwealth finds that a terminated corporation ought to be revived, he may revive the corporation upon application "by an interested party." In Russell Box Co. v. Commissioner of Corps. & Tax'n, 325 Mass. 536, 540, 91 N.E.2d 750 (1950), the Supreme Judicial Court ("SJC") stated that "[a]n 'interested party' is one who is interested in having the corporation revived." But this tautology did not resolve the issue; the SJC did not simply conclude then that any party who files an application for revival is an interested party. Instead, the SJC proceeded to consider the nature of the interest of the applicant there and concluded that "one who has a pending claim against the corporation may have such an interest." Id. Similarly, in In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution, 675 F. Supp. 22, 41 (D. Mass. 1987), the court found two parties to be interested parties for purposes of the revival of a corporation whose existence had been terminated where the parties aimed to enforce claimed indemnification rights, among other things. Here, Lavendar has a claim against AWF, and therefore has an interest in its revival (so that she may bring a claim against AWF), and an interest in what she asserts was a fraudulent revival.

In Barker-Chadsey Co. v. W.C. Fuller, Co., Inc., 16 Mass. App. Ct. 1, 5, 448 N.E.2d 1283 (1983), the court found that where a corporate officer was simply ignorant of the fact of dissolution, that officer (among other interested parties) could apply to the Secretary of State for revival of the corporation. Here, Lavendar alleges that she was a director of AWF in November 2018 when Sterling sought AWF's revival. Am. Compl. ¶ 42 [#22]. Accordingly, the court finds that at this stage, based on the pleadings and documents filed with the Secretary of State, Lavendar, as an alleged former director and claimant, has an interest in AWF's revival, and an interest in the alleged fraudulent revival.

The court notes finally that in Russell Box Co., "the granting of the certificate [of revival by

the Secretary of State] was not in itself a determination of any rights or duties. It was preliminary only to necessary action in the courts. It merely made it possible for rights and duties to be considered in the proper forum." 325 Mass. at 541. While Lavender may not ultimately succeed in her claims, that the Secretary approved Sterling's revival of, and merger, with AWF, does not deprive Lavender of a judicial forum to challenge that action.

   B.   Personal Jurisdiction over the Greenleaf Defendants

   Defendants also argue that the Amended Complaint [#22] should be dismissed as to the Greenleaf Defendants for lack of personal jurisdiction because Plaintiffs have failed to allege any contacts between the Greenleaf Defendants and Massachusetts. Mem. in Support of Mot. Dismiss 14-15 [#34]. Plaintiffs contend that they have sufficiently alleged that the Greenleaf Defendants, Sterling, and Ford were joint venturers and, as a result, Ford and Sterling's contacts with Massachusetts are sufficient for the court to exercise personal jurisdiction over the Greenleaf Defendants. Opp'n 15-16 [#38]. Plaintiffs also argue that their RICO conspiracy claim permits the court to exercise personal jurisdiction over the Greenleaf Defendants. Id. at 16.

   1.   Legal Standard

   The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. Nowak v. Tak How Inves., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001).

   The Massachusetts long-arm statute provides as follows:

   A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the persons (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; (e)

14

having an interest in, using or possessing real property in this commonwealth . . . .

Mass Gen. Laws ch. 223A, § 3.

The due process inquiry requires that there be "minimum contacts" between the defendant and the forum state. Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995) (quoting Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). Thus, a court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage with the forum state," and may exercise specific jurisdiction over a cause of action that "relates sufficiently to, or arises from" the defendant's forum-state contacts. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (citation omitted). The requirements of both must be satisfied to establish jurisdiction over a defendant. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

On a motion to dismiss for want of personal jurisdiction, the court typically requires the plaintiff to make a "prima facie" showing, that is, "'whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (quoting Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992)). The plaintiff bears the burden of proffering evidence of specific facts showing that the court has personal jurisdiction over the defendant. Barrett, 239 F.3d at 26. If the plaintiff proffers such facts, "the court must accept the proffer at face value." Id. at 27.

2.  The Exercise of Personal Jurisdiction over the Greenleaf Defendants

The Greenleaf Defendants are both New Mexico corporations and Plaintiffs have offered no

evidence that either Greenleaf Defendants regularly conduct business in Massachusetts. Thus, it is clear that the Greenleaf Defendants are not subject to personal jurisdiction in Massachusetts based on their own in-forum contacts. Am. Compl. ¶¶ 16-17 [#22]. Accordingly, Plaintiffs must establish a basis for this court to exercise specific jurisdiction over the Greenleaf Defendants.

"'Specific personal jurisdiction . . . may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Warren Env't, Inc. v. Source One Env't, Ltd., Civ. Action No. 18-cv-11513-RGS, 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Id. (citing Baskin-Robbins, 825 F.3d at 35).

The court finds that Plaintiffs have not proffered sufficient facts that the Greenleaf Defendants have conducted any business in Massachusetts nor have Plaintiffs proffered that the Greenleaf Defendants have any significant ties to Massachusetts, or have purposely availed themselves of this forum. While Plaintiffs allege that Ford and/or Sterling acted "in concert with" the Greenleaf Defendants in filing documents with the Secretary of State, Am. Compl. ¶¶ 64, 66 [#22], there are no allegations describing what the Greenleaf Defendants are alleged to have done. Put differently, Plaintiffs have not shown that the cause of action here arises out of the Greenleaf Defendants contacts with Massachusetts. That there are connections between the Defendants does not mean that actions taken by Ford and Sterling in Massachusetts amount to sufficient minimum contacts with Massachusetts for the purpose of personal jurisdiction over the Greenleaf Defendants.

Plaintiffs' argument in their Opposition [#38] does not support a different finding. Where a plaintiff faces a motion to dismiss for want of personal jurisdiction, he must do more than argue, in

a lawyer's brief, the existence of a "favorable factual scenario"; instead, the plaintiff "must verify the facts alleged through materials of some evidentiary quality." Barrett, 239 F.3d at 27 (citations omitted). Plaintiffs have not offered any proof of such facts here. In Draynard, the First Circuit found the joint venturer relationship was sufficient because the plaintiff proffered evidence that the two defendants purported to be joint venturers in the forum state and that the in-forum party held out that it was acting on behalf of the other in its dealings in Massachusetts. Draynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 53 (1st Cir. 2002). Here there is no evidence Sterling and Ford acted as Greenleafs' agent in Massachusetts nor is there any evidence that they had "substantial influence" over Sterling and Ford's activities in Massachusetts. Id.

Plaintiffs' allegations – let alone proof – concerning Greenleafs' participation in the alleged RICO conspiracy fare no better; they are not specific, there is no allegation the Greenleaf Defendants were involved in the alleged wire fraud, and although Plaintiffs have alleged the Greenleaf Defendants are involved in marijuana cultivation and distribution, there are no specific allegations tying their actions to the Property so as to satisfy the constitutional minimum for specific jurisdiction here.

Accordingly, because the Plaintiffs have placed insufficient facts before the court to satisfy the minimum requirements of the exercise of personal jurisdiction, the Amended Complaint [#22] is dismissed as to the Greenleaf Defendants.

C.  Prior Pending Action

Defendants argue that because the same parties are involved in the action before this court and the action before the New Mexico state court, both actions arise out of the same facts, Plaintiffs seek the same relief in both actions—a determination that the merger between AWF and Sterling is void—and the controlling issues in this action have already been determined in the New Mexico state court action, dismissal or a stay of this action is appropriate under the prior pending action

doctrine. Mem. in Support of Mot. Dismiss 8-9 [#34].

Plaintiffs argue that the claims before this court are not before the New Mexico state court, that the New Mexico state court does not have jurisdiction to order the revival and merger ineffective, and, because the New Mexico state court cannot rule on the revival and merger challenge, there is no risk of inconsistent judgments. Opp'n 8-9 [#37].

1.   The New Mexico Action

The New Mexico action was initiated a year and a half before the action here. Defs.' Ex. A, State Court Docket [#42-1]. Plaintiffs are AWF, Lavendar, and Karen Hammer. Defs.' Ex. B, Amended Complaint in New Mexico State Court Action 1-2 [#42-1]. Defendants are Ford, Sterling, members of Sterling's Board of Directors, R. Greenleaf Organics, The Sterling Foundation, and the Secretary of State of New Mexico. Id. at 2-3. The <u>Amended Complaint</u> in New Mexico state court asserts claims including that the Articles of Merger between AWF and Sterling are invalid, that Defendants engaged in misrepresentation and identity theft in connection with the Application for Revival of AWF, that Defendants engaged in commercial disparagement in their statements to the Massachusetts Secretary of State and the New Mexico Secretary of State, that Defendants engaged in corporate identity theft in taking control of AWF, that once they assumed roles as directions of AWF, they breached their fiduciary duties to AWF, and that the revival and merger of AWF constituted a civil conspiracy. Id. at 8-16.

On January 24, 2020, the New Mexico state court held an evidentiary hearing on the parties' requests for declaratory judgment and injunctive relief. Defs.' Ex. H, Transcript of Hearing [#42-1].[6] During the hearing, Defendants' counsel argued that the New Mexico court:

---

[6] Plaintiffs' claim for declaratory relief asked the New Mexico court to declare that Lavendar and Hammer are the "legitimate and proper constituted members" of the AWF Board, that AWF is a New Mexico corporation and should be reinstated, and that Defendants should be stricken from the New Mexico Secretary of State's records. Defs.' Ex. B, New Mexico Am. Compl. 22 [#34-2]. Plaintiffs' requests for injunctive relief included requests that the court order the New Mexico

lacks jurisdiction to do what the plaintiffs are asking. The plaintiffs are asking you to undo the merger, the revival [and] merger, that was performed by my clients. In order to so, you would have to have jurisdiction over the commissioner of corporations of Massachusetts, which clearly this court does not have, and he is not a party to this case. So we're in the wrong venue to begin with. Only a Massachusetts court could overrule the decision of the Massachusetts . . . commissioner of corporations.

. . . .

So we would ask Your Honor, number one, to deny the plaintiff's request to undo the merger for [various other] reasons. But more importantly –. . . .

Defs.' Ex. H, Transcript from Recorded Proceeding before New Mexico District Court 9-10, 13 [#42-1]; see also id. at 13 ("until the commissioner of corporations of Massachusetts is sitting at this table, there is no jurisdiction to [undo the merger]"); Defs.' Ex. C, Declaratory Judgment, Finding ¶ 8 [#42-1] (the Sterling Foundation's Brief in Support of Preliminary Injunction argued "that this Court lacked jurisdiction over the Commissioner [of Corporations of the Commonwealth of Massachusetts] to direct him to un-recognize the revival and merger").

On March 5, 2020, the New Mexico state court ruled that (1) the "revival of the [AWF] by Defendants Ford, Tillman, Romero and Hatfield was accomplished pursuant to Massachusetts law and approved by the Commissioner"; (2) "[t]he merger of the [AWF] into The Sterling Foundation was accomplished pursuant to Massachusetts law and was approved by the Commissioner"; (3) the New Mexico court lacks jurisdiction over the Commissioner; (4) the acceptance of the registration of the articles of revival and merger by the New Mexico Secretary of State was a ministerial act; and (5) the court "lacks jurisdiction to order that the revival and merger were ineffective as requested by Plaintiffs." Defs.' Ex. C, Declaratory Judgment 3 [#42-1]; see also Am. Compl. ¶ 73

---

Secretary of State to rescind its adoption of articles of merger, and instead to accept Plaintiffs' application for reinstatement, and to enjoin Defendants from using the AWF name and its marks. Id. at 23-27. Defendants' counterclaim for declaratory judgment requested that the court order the merger valid and binding and that the AWF directors are Ford, Romero, Hatfield, Tillman, and Sandifer. Defs.' Ex. I, Defendants' Counterclaim 19 [#42-1].

[#22].

On June 5, 2020, a New Mexico Special Commissioner, finding that the Declaratory Judgment was a judgment in favor of The Sterling Foundation, ordered the Sherriff of Cibola County, New Mexico, where the Property is located, to deliver possession of the Property to Sterling and to remove Lavendar, and any other persons there without legal authority, from the Property. Defs.' Ex. D, Writ of Possession 3 [#42-1].

On August 14, 2020, the New Mexico state court granted in part and denied in part Plaintiffs' application for a temporary restraining order; specifically the New Mexico state court granted Plaintiffs' application for a temporary restraining order as to any destruction of any improvements to the Property; the court ordered that neither Plaintiffs nor Defendants were to have access to an AWF bank account; the court ordered Defendants to not take any further actions to obtain Plaintiffs' assets; and the court allowed  Lavendar to return to the property to retrieve her cats. Plaintiffs' Ex. 8, Order on Temporary Restraining Order Application 8-2, 8-3 [#38-8].

On August 19, 2020, AWF, Lavendar, and Hammer filed a motion to reconsider the New Mexico state court declaratory judgment, and the New Mexico state court denied the motion. See Defs.' Ex. E, Order on Motion to Reconsider Declaratory Judgment [#42-1]. The New Mexico state court stated that her Declaratory Judgment found the revival of AWF and its merger into Sterling met the statutory requirements of New Mexico and Massachusetts, that Ford, Tillman, Romero, and Hatfield are directors of Sterling, and that AWF merged into Sterling. Id. The New Mexico state court also stated that the effect of her Declaratory Judgment was to deny Plaintiffs' five claims for injunctive relief, to deny Plaintiffs' single declaratory judgment claim, and to grant two parts of Defendants' counterclaim for declaratory judgment, but that all of the parties remaining claims and counterclaims were still pending and had not had a merits hearing. Id.

On September 1, 2020, the New Mexico state court also denied Plaintiffs' motion to stay the

declaratory judgment pending the outcome of the litigation in the Commonwealth of Massachusetts, explaining that the March 5, 2020 declaratory judgment did not authorize any action and did not make appropriate findings to permit enforcement. Defs.' Ex. F, Order on Lavendar's Emergency Motion to Stay Declaratory Judgment [#42-1].

On September 25, 2020, Plaintiffs filed a motion in New Mexico state court asking the New Mexico state court to dismiss the case without prejudice so that Plaintiffs could proceed with their claims before this court. Plaintiffs' Ex. 9, Motion to Dismiss N.M. Case [#38-9].

On February 17, 2021, the New Mexico state court stayed all matters pending a decision on Defendants' motion to dismiss here. See Order Entering Stay [#64-1].

1.  Legal Standard

"Under the prior-pending-action doctrine, 'the pendency of a prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought, constitutes good grounds for abatement of the later suit.'" Quality One Wireless, LLC v. Goldie Group, LLC, 37 F. Supp. 3d 536, 540 (D. Mass. 2014) (quoting O'Reilly v. Curtis Pub. Co., 31 F. Supp. 364, 364-65 (D. Mass. 1940)). "As a general rule, the suit filed first should have priority 'absent the showing of balance of convenience in favor of the second action.'" Id. at 540-41 (quoting Adam v. Jacobs, 950 F.2d 89, 93-94 (2d Cir. 1991)). "The doctrine arises out of concerns about judicial efficiency and avoiding inconsistent judgments." Id. at 541 (citing Curcio v. Hartford Fin. Servs. Grp., 472 F. Supp. 2d 239, 243 (D. Conn. 2007)).

Generally, a court may stay or dismiss a later-filed action under the prior pending action doctrine if two conditions are met: (1) there exists an identity of issues between the two actions and (2) the controlling issues in the later-filed action will be determined in the earlier-filed action. Id. (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1360, at 89 (3d

ed. 2004)). "The parties in the two suits need not be identical; they need only share sufficient congruence of interests." Id. (citing Whitten Ranch, Inc. v. Premier Alfalfa, Inc., No. 4:09CV3007, 2009 WL 1844482, at *2 (D. Neb. June 18, 2009) (finding 'congruent, if not identical' interests of individual and company owned by him satisfied doctrinal requirement); Andy Stroud, Inc. v. Brown, No. 08 Civ. 8246 (HB), 2009 WL 539863, at *10 (S.D.N.Y. Mar. 4, 2009) (finding sufficient commonality between individual and two companies wholly owned by him); see also Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc., 697 F. Supp. 2d 1042, 1049 (N.D. Iowa 2010) (collecting cases)). "Moreover, '[w]hen it is possible that, through amendment, each action may contain all of the issues and parties presently contained in either action, the continuation of the first action to be filed is favored.' Id. (citing Holliday v. City of Newington, No. 3:03CV1924 (SRU), 2004 WL 717160, at *1 (D. Conn. Mar. 19, 2004)).

"[W]hether to apply the doctrine in a particular instance is a matter for the court's discretion." Id. at 542. If conditions for a stay or dismissal are met, courts consider a variety of factors to determine whether dismissal in favor of a prior pending action is appropriate, including:

> (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay [or dismissal].

Id. (quoting Universal Gypsum of Georgia, Inc. v. American Cyanamid Co., 390 F. Supp. 824, 827 (S.D.N.Y. 1975)).

2.  Analysis

The court begins by analyzing whether the parties are similar enough for the prior pending action doctrine to apply. The remaining Plaintiff here, Lavendar, is also a plaintiff in the New Mexico state court action. Defs.' Ex. B, Amended Complaint in New Mexico State Court Action 1-2 [#42-1]. Two of the three remaining Defendants here, Ford and Sterling, are defendants in the

22

New Mexico state court action. However, the Secretary is not a defendant in the New Mexico state court action.

The court next turns to whether the issues in the two suits are the same. In both actions, Plaintiffs challenge Sterling's revival of and merger with AWF and which parties are the rightful owners of the Property. Indeed, Plaintiffs do not appear to dispute that the issues in the two suits are the same. See Opp'n 8-9 [#38]. The court finds that the state and federal actions allege similar causes of actions and arise out of the same transactions.

However, despite the overlapping nature of the two actions, a critical issue – whether the revival of AWF under Massachusetts substantive law and its merger into The Sterling Foundation was fraudulent – will not be determined on the merits in the New Mexico state court action. Instead, the New Mexico state court has concluded that it "had no jurisdiction over any challenge to the *substantive* propriety of the revival and merger because AWF is a Massachusetts non-profit, and the issue is properly heard by a Massachusetts court." Defs.' Ex. E, Order on Motion for Reconsideration ¶ 11 [#42-1] (emphasis in original); see also Defs.' Ex. C, Declaratory Judgment, Order ¶ 3 [#42-1] ("[t]his Court lacks jurisdiction over the Commissioner"); id. at ¶ 5 ("[t]his Court lacks jurisdiction to order that the revival and merger were ineffective"). Accordingly, the controlling issue in this Massachusetts case will not be resolved in the New Mexico state court action.

Defendants argue that if the court finds that the issue of whether the revival and merger were obtained fraudulently is not before the New Mexico court, Plaintiffs should amend the complaint in New Mexico to include the fraud claims. Reply 6-7 [#42]. But the fraud claims are already before the New Mexico court but cannot be resolved there because the Secretary of State is not a party. Accordingly, Defendants' arguments are unavailing.

Because Defendant Secretary of State is not a party to the New Mexico state court action,

and because the question of whether the revival and merger were fraudulent under Massachusetts substantive law will not be decided there, the court finds the prior-pending action doctrine does not apply here.

The court notes, however, that but for the inability to resolve the issue of whether the revival and merger were fraudulent under Massachusetts law, the doctrine would apply. The action was filed first in New Mexico; the Property is in New Mexico; the Greenleafs are New Mexico entities and Greenleaf Inc. is a party to the suit there, while this court has no jurisdiction over either Greenleaf Defendant; and all events at issue in the claims (and counterclaims in New Mexico) other than the revival and merger of AWF have taken place in New Mexico. Accordingly, the court anticipates that once the issues relating to the revival and merger of AWF are resolved, if other matters remain unresolved here, the court would entertain a renewed motion to dismiss or stay the remaining claims pursuant to the prior pending action doctrine.

D.  Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted

1.  Legal Standard

To survive a motion to dismiss, the complaint's well-pleaded facts must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court may also take judicial notice of certain state court records and decisions. See Lydon v. Local 103, Int'l Broth. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) ("a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice'") (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir.2008)); see also United

States v. Mercado, 412 F.3d 243, 247-48 (1st Cir. 2005). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011).

Where Plaintiffs allege fraud, either as independent claims or as predicates to a RICO offense, they must meet the heightened pleading standards of Fed. R. Civ. P. 9(b). New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987) (holding "that Rule 9(b) requires specificity in the pleading of RICO mail and wire fraud"). By its terms, Rule 9(b) directs that "a party must state with particularity the circumstances constituting fraud or mistake." The First Circuit has interpreted this rule to require that beyond pleading "the false statements and by whom they were made," Plaintiffs must also identify "the basis for inferring scienter." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). In application, this renders a "general averment of the defendant's 'knowledge' of material falsity" insufficient. Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992), superseded by statute on other grounds, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737). Instead, plaintiffs must put forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id.

2. RICO Claim

Defendants argue that Plaintiffs' allegations that Defendants violated RICO must be dismissed because the Amended Complaint [#22] fails to show that the alleged predicate offenses for RICO liability under 18 U.S.C. § 1962(c), wire fraud, Am. Compl. ¶¶ 78-85 [#22]; drug cultivation and distribution in violation of the Controlled Substances Act, id. at ¶¶ 86-89, and money laundering, id. at ¶ 90, demonstrate a pattern of racketeering activity. Mem. in Support of Mot. Dismiss. 16 [#34]. Defendants also argue that two of the alleged predicate acts, drug cultivation and money laundering, cannot be attributed to them and the third, wire/mail fraud, does

not amount to or pose a threat of continuous criminal activity. Id. at 16-18.

Plaintiffs argue that they have adequately pleaded a RICO violation, including the drug cultivation predicate act, and that the allegations concerning wire fraud do amount to a pattern of racketeering activity and threat of continued criminal activity. Opp'n 17-18 [#38].

RICO "is a statute that Congress enacted as a tool in the federal government's war against organized crime to help combat enduring criminal conduct." Home Orthopedics Corp. v. Rodriguez, 781 F.3d 521, 527 (1st Cir. 2015) (internal citations and quotations omitted). "In addition to allowing the criminal prosecution of RICO violators, the statute's reach also provides a generous private right of action—successful plaintiffs are entitled to triple damages if they can prove they were 'injured in [their] business or property by reason of a violation of section 1962.'" Id. (quoting 18 U.S.C. § 1964(c) and citing 18 U.S.C. § 1962). To plead a violation of section 1962(c), plaintiffs must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted). "For there to be a pattern, a plaintiff must demonstrate not only the existence of two or more predicate acts, but also that they are related and pose at least a threat of continued criminal activity." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44 (1st Cir. 1991) (internal citations omitted).

Defendants challenge whether Plaintiffs have alleged sufficient facts to show at least two predicate acts of racketeering and whether the predicate acts show a pattern. Accordingly, analysis of this claim centers on whether Plaintiffs have adequately pleaded facts to plausibly show a pattern of racketeering.

The court begins with the drug cultivation predicate offenses.[7] Plaintiffs have not alleged any specific facts showing that Defendants Ford and Sterling, cultivate, promote, sell, and distribute

---

[7] The money laundering predicate act is not adequately pleaded where Plaintiffs have not provided a factual basis for their allegation that revenue from marijuana sales "funneled through . . . Sterling." Am. Compl. ¶ 90 [#22].

marijuana; nor do Plaintiffs provide any facts in support of their allegation that Defendants intend to use AWF and the Property for "marijuana trafficking." Am. Compl. ¶¶ 86-89 [#22]. However, Plaintiffs do allege that Ford intended to use the Property as a treatment center for patients recovering from opioid addiction and that these patients would be treated with marijuana and other cannabis products. Id. at ¶¶ 60, 63.

Assuming that these allegations are sufficient to support a claim of racketeering activity based on controlled substance distribution, Plaintiffs have failed to adequately allege a pattern of racketeering activity. "Although showing two predicate acts is the only statutory requirement, case law establishes that this is not sufficient to prove a 'pattern'—the plaintiff must also demonstrate that the 'predicates are related, and that they amount to or pose a threat of continued criminal activity.'" Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 15 (1st Cir. 2000) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original)). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." H.J. Inc., 492 U.S. at 242.

Here, the Amended Complaint [#22] pleads wire and mail fraud activity in connection with the revival of AWF and the merger with Sterling. This activity does not amount to a pattern under RICO and is, instead, "a single effort, over a finite period of time" to take control of AWF and the Property, Efron, 223 F.3d at 21, and does not satisfy RICO's continuity requirement for purposes of showing a pattern.

Turning next to the "amount to" test, "a plaintiff who alleges a high number of related predicate acts committed over a substantial period of time establishes that those acts amount to continued criminal activity." Fleet Credit Corp. v. Sion, 893 F.2d 441, 446 (1st Cir. 1990). Plaintiffs allege that Defendants sent four communications to the Secretary, Am. Compl. ¶¶ 79-82 [#22], and then, by responding to the New Mexico state court litigation, again submitted these wire

communications. Id. at ¶ 83. Plaintiffs also allege that Defendants intend to use the Property for a treatment facility where marijuana will be distributed. Id. at ¶ 88. The court finds these alleged predicate acts of mail and wire fraud, which occurred over a forty-three-day period of time between November and December 2018, and the allegation of future drug distribution at the Property when/if it becomes a treatment facility does not allege a "series of related predicates extending over a substantial period of time." H.J. Inc., 492 U.S. at 242. The Plaintiffs have failed to show that these two predicates are sufficiently related to each other nor do Plaintiffs show that the racketeering activity "poses a threat" for purposes of satisfying the continuity requirement because, as alleged, the Plaintiffs are speculating about future distribution and, given the facts pleaded, the court does not find that this appears to be a part of Sterling's "regular way of doing business." Id.  Because Plaintiffs have failed to adequately allege a pattern of racketeering, their RICO claim is dismissed.

      3.   Lanham Act Claims

Defendants argue the Lanham Act claims (Counts II and III) should be dismissed because "Plaintiffs have not met the [Lanham] Act's requirement that the alleged misuse of a trade name occurs only when a person 'uses in commerce' a 'word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation." Mem. in Support of Mot. Dismiss 19 [#34] (citing 15 U.S.C. § 1125(a)(1)). Plaintiffs respond that they alleged Defendants "deceitfully made claim to represent AWF and used its name to make misrepresentations across state lines" to revive AWF and to merge it into Sterling and that is sufficient for pleading the trade name/mark was used in commerce. Opp'n 19-20 [#38].

Under the Lanham Act, a trademark includes "any word, name, symbol, or device or any combination thereof" used by an individual or entity "to identify and distinguish his or her goods . . . from those manufactured or sold by others." 15 U.S.C. § 1127. Trademark rights are conditioned upon use in commerce. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 20, 97 (1918). "A

mark is deemed 'in use in commerce' when it is affixed to the goods with which it is associated and those goods are then 'sold or transported in commerce.'" General Healthcare Ltd. v. Qashat, 364 F.3d 332, 335 (1st Cir. 2004) (quoting 15 U.S.C. § 1127).

Plaintiffs' Lanham Act allegations state that Defendants "began promoting the AWF name and property in a way that infringes on this trademark . . . by asserting claim to its primary facility . . . in order to provide marijuana products to be smoked" and that this wrongfully infringes on Plaintiffs' good name and mark. Am. Compl. ¶ 106 [#22]. Plaintiffs also allege that Defendants have "falsely implied and continue to falsely imply the endorsement and/or sponsorship of marijuana, drug cultivation, sales and use by Plaintiffs AWF and Lavendar." Id. at ¶ 110. Plaintiffs' allegations that Defendants' use of the AWF name and Property have affected their own interstate business do not satisfy the showing required for a Lanham Act claim because they have not adequately pleaded that Defendants affixed the name or mark to goods that were sold or transported in commerce. The alleged misuse of the name and mark in filing paperwork for revival and merger does not amount to its use in commerce where no goods are alleged to have been sold or transported.

Accordingly, the court dismisses Counts Two and Three of the Amended Complaint [#22].

4.   Conversion

Defendants argue that Plaintiffs' conversion claim should be dismissed because Sterling is the legal owner of all of AWF's assets, and Plaintiffs cannot establish their own legal rights to the personal property.

"The tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." Kelley v. LaForce, 288 F.3d 1, 11 (1st Cir. 2002) (citing Third Nat'l Bank v. Continental Ins. Co., 388 Mass. 240, 446 N.E.2d 380, 383 (Mass. 1983)). "It is no defense to conversion for a defendant to claim

that he acted in good faith, reasonably believing that he had a legal right to possession of the goods." Id. (citation omitted).

Plaintiffs have alleged that through Defendants "knowingly false statements and filings" Defendants were able to wrongfully assert ownership, control, and dominion over the personal property of AWF and Lavendar, including books, writings, and kitchen/garden supplies. Am. Compl. ¶ 120 [#22].

Plaintiffs have further alleged that Defendants have acted with the intent to deprive Plaintiffs of the described property. Dismissing the conversion count at this stage is premature because if Plaintiffs succeed in proving that revival of AWF and the merger of AWF and Sterling were obtained by fraud and are unlawful under Massachusetts substantive law, that Defendants believed they had the right to the personal property is not a defense to conversion. Kelley, 288 F.3d at 12. Accordingly, the court finds that Plaintiffs have plausibly alleged a claim for conversion.[8]

III. Conclusion

For the aforementioned reasons, the Motion to Dismiss [#33] the Amended Complaint [#22] is ALLOWED as to Plaintiff AWF, the Greenleaf Defendants, and the RICO and Lanham Act claims; and is otherwise DENIED.

IT IS SO ORDERED.

Date: May 11, 2021

/s/ Indira Talwani
United States District Judge

---

[8] The Amended Complaint [#22] includes two other claims: Fraud/Constructive Trust (Count IV) and Declaratory Judgement (Count VI). Defendants raised no arguments for dismissal of these counts other than the standing argument discussed above.